1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DORETTE GAIL JENKINS,

Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of
Social Security,[1]

Defendant.

Case No.  1:22-cv-00309-BAM

**ORDER DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT OR REMAND**

(Docs. 16, 18)

## **INTRODUCTION**

Plaintiff Dorette Gail Jenkins ("Plaintiff") seeks judicial review of a final decision of the

Commissioner of Social Security ("Commissioner") denying her application for disability insurance

benefits under Title II of the Social Security Act.  The matter is currently before the Court on

Plaintiff's motion for summary judgment or remand and the parties' briefs, which were submitted,

without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d)
of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case,
including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 11, 12, 13.)

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court will deny Plaintiff's motion for summary judgment and grant the Commissioner's request affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

This case has a lengthy procedural history.  Plaintiff filed an application for disability insurance benefits on March 3, 2014.  AR 18, 157-58.[3]  Plaintiff initially alleged that she became disabled on January 8, 2008, due to back problems, arthritis, migraine headaches, neck problems, wrist problems, left arm and hand problems, knee problems, and degenerative disk disease.  AR 18, 157, 180.  Plaintiff's application was denied initially and on reconsideration.  AR 94-98, 100-04.  After an administrative hearing in April 2016, an ALJ issued an order denying benefits on June 22, 2016.  AR 31-69, 15-30.  Plaintiff sought review of that decision, which the Appeals Council denied.  AR 1-5.  Plaintiff appealed to the district court, and the district court ordered remand on March 21, 2019.  AR 1172-76.

Based on the district court's order, the Appeals Council remanded the case to an ALJ.  AR 1183-85.  A different ALJ held an administrative hearing in November 2019, and issued an unfavorable decision on December 11, 2019.  AR 1119-49, 1102-1118.  Plaintiff appealed to the district court in February 2020.  AR 1457-60.  The parties stipulated to voluntary remand in October 2020.  AR 1495-97.

Following the stipulated remand, the Appeals Council again remanded the case to an ALJ.  AR 1498-1502.  ALJ Matilda Surh held an administrative hearing on November 30, 2021.  AR 1414-1438.  On January 13, 2022, ALJ Surh issued a partially favorable decision.  AR 1388-1413.  The ALJ's decision became final on March 15, 2022.  AR 1389.  This appeal followed.  (Doc. 1.)

///

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

**Relevant Hearing Testimony**

April 27, 2016 Hearing

At the administrative hearing held in April 2016, Plaintiff appeared with her attorney, William Kuntz.  AR 33.  Plaintiff testified that she was in the Air National Guard for over 25 years, until 2005. She has received service-connected disability benefits, with a 90 percent rating, based on numerous problems.  AR 38.  After the Air National Guard, she worked part-time at Jo-Ann Fabrics.  AR 39-40. Plaintiff confirmed that she worked in 2013, but stopped working in August 2014.  AR 50-51.

Plaintiff testified that her neck, left shoulder, and low back are the main things keeping her from working.  Her neck is in constant pain, and she has headaches.  She has arthritis in her low back, plus a disc pressing on her spinal column, making her legs and butt numb.  AR 41-42.  She uses ice packs and Aleve to ease the pain.  AR 43.  She would not be able to return to the administrative specialist work that she did in the Air Force because of spasms in her neck and headaches.  She reportedly has two herniated discs in her neck, but does not want to have surgery.  AR 54-55.

Plaintiff moved to Victorville in 2005, and her mother passed away in 2013.  Plaintiff's mother lived with her, and Plaintiff was her full-time caregiver.  Plaintiff would lift her mother numerous times a day.  Her mother weighed about 160 or 170 pounds.  AR 54.

Plaintiff testified that she lies down on her stomach to straighten out her back.  She uses a TENS unit, which helps for a little bit, just like physical therapy.  She has had injections in her spine and in her left shoulder.  The back injections helped some, but not completely, especially with the headaches, neck problems, numbness, and left shoulder.  AR 46.  Her left shoulder problem is partly due to the muscles in her neck and arthritis, which causes rubbing against the muscle and numbing of her arm and hand.  AR 48.  Plaintiff also has problems with her knees.  Her left knee "pops out of position, " "like the ball pops out of the socket," and then she goes down.  AR 47.  She additionally has plantar fasciitis, making it hard for her to stand for very long.  AR 48.

Plaintiff drives a couple of times a week.  She attends school, studying computers, and is taking a women's history class, once a week for three hours.  AR 49-50.  Plaintiff has difficulty because of her low back and the herniated disc pushing on her spinal column.  AR 55.  She also has difficulty standing walking very far or very long because of her low back.  She has numbing that can

go all the way to her toes.  She can complete her three-hour class because they take breaks, and she can stand up at any time.  AR 56.

November 15, 2019 Hearing

At the administrative hearing held in November 2019, Plaintiff appeared with her attorney, William Kuntz.  AR 1121.  At the outset of the hearing, Plaintiff amended her alleged onset date to March 3, 2014, due to substantial gainful activity in 2013.  AR 1123.  She worked part-time in 2015, but the work was sporadic due to Plaintiff's medical issues.  AR 1123-25.

Plaintiff confirmed that her neck and back are her two biggest problems.  As to injury, trauma, or accident to her neck, Plaintiff was in a motor vehicle accident in 1984.  AR 1126.  Plaintiff's symptoms include severe headaches that start in the base of her skull and run to the top and front of her head and muscle spasms down both sides of her neck into her shoulders with her arms going tingly and numb.  She also has radiating pain in the base of her skull in her neck, giving her headaches four to five days a week.  When she has a headache, she drinks coffee, takes over-the-counter migraine medication, and lies down with an ice pack.  She takes the same medication for her neck.  AR 1127-29.  For treatment, she had physical therapy in 2013 or 2014, and three or four injections for her headaches and neck pain in 2015 or 2016.  She has not had any treatment in the last few years.  She has been told that surgery is the only thing that will correct it, but she does not want to have surgery.  AR 1130.  When asked why she had not received much medical treatment during the past few years, Plaintiff testified that she had moved to Sonora and "was taking care of the headaches and the neck pain and everything" on her own.  There is nothing they can do for her other than give her prescription medications.  She does not want any prescription pain pills.  AR 1130-31.

Plaintiff further testified that she has a deformed spine.  She numbness in her legs.  Her sciatic nerve also bothers her because it is being pinched by the spinal cord.  Her rear end goes numb, down to her legs and feet.  She also has pain radiating from her rear end to her toes.  As to treatment, she recently had two or three weeks of physical therapy, which helped.  She has not received any other treatment for her back within the past few years.  AR 1131-32.

After taking her over-the-counter pain pills, she would rate her pain down to a five, but it sometimes does not work.  When she has pain, she tries Aleve, ice packs, and laying down.  Surgery

4

has not been recommended for her back, but it is an option.  She is not interested in surgery.  AR 1132.

When asked about her left shoulder, Plaintiff testified that she has pain doing down the left side of her neck into her arms and down to her fingertips.  She had physical therapy in 2014 or 2015, which helped somewhat for a short while.  She has not had any other treatment.  AR 1133.

Plaintiff testified that depending on how good of a day she is having, she can sometimes sit for maybe half an hour and sometimes she can only sit for five minutes.  She can sometimes stand for an hour and sometimes for not more than ten minutes.  She cannot walk very far, but it varies depending on how bad she is doing.  AR 1133.  She can lift about 10 pounds.  She is able to handle and manage her personal self-care tasks, such as bathing dressing, and grooming.  As to household chores, when she is up to it, she cleans the downstairs.  She is able to cook and wash dishes, but has to stop repeatedly because her legs go numb.  She does laundry when she is up to it.  She does not vacuum or mop.  If she is up to it, she goes grocery shopping once a week.  She may spend about an hour total on the internet per day.  As to hobbies, she used to sew and make crafts.  AR 1134-35.

In response to questions from her attorney, Plaintiff verified that her neck problem worsened in 2013.  Plaintiff also confirmed that she had been receiving veteran's 100% service connected disability for a number of years, but that was "really more for other issues" than her neck.  AR 1136.  Plaintiff reported that her neck condition had "gotten progressively worse" since the hearing in 2016.  AR 1136-37.  She still spends a significant amount of time laying down, usually several times a day.  She cannot go from breakfast until dinner without laying down on the sofa.  Instead of going the surgery route, she limits her activities to control her pain.  She uses ice packs and has had physical therapy.  When she first started having problems after her mom's death, she was on narcotic pain medications, but she then refused to take them because her father got hooked on pain medication.  AR 1137-38.  She also has a TENS unit, which she uses "[o]nce in a while when the pain's bad."  AR 1138.  She also had epidural injections in her cervical spine, nerve blocks in her neck, and at least one steroid injection her left shoulder.  AR 1138-39.  Plaintiff confirmed that she has difficulty walking and picking up her left foot frequently, worsening since she reported it as a problem in 2017.  AR

1139.  She also has pain radiating in both her arms when she gets headaches and neck pain, worse on her left arm.  She is left-handed.  AR 1140.

November 30, 2021 Hearing

ALJ Surh held a telephonic hearing on November 30, 2021.  Plaintiff appeared with her attorney, William Kuntz.  AR 1416.

In response to questions from the ALJ, Plaintiff testified that she graduated from high school with a diploma.  She does not have any vocational certificates or licenses.  She supports herself with VA disability, Social Security retirement, and part of her military retirement.  She lives with a friend.  AR 1418.

Plaintiff testified that she is unable to work because of severe headaches and pain in her back and legs.  AR 1419-20.  She received treatment at the VA and had physical therapy and injections, but nothing helped.  She takes Aleve twice a day and uses ice packs.  She has had acupuncture and is waiting to see about chiropractic care.  The pain in her neck, back and legs is constant.  The pain in her legs comes from her back and the sciatic nerves.  It starts with burning pain in her butt and then numbness down both of her legs to her toes.  The Aleve helps to some point.  AR 1421-22.  She does not use an assistive device.  She has a cane, which was her mother's, but she has not had to use it.  If she is not at home, she will try to squat down until the pain goes away.  The pain is not constant, and goes away after five or ten minutes.  AR 1425-26.

When she is not in pain, she is able to do things around the house.  On good days, she will go into town to get groceries and try to clean, picking up around her house.  AR 1423.  She will listen to music or watch television.  She is sitting most of the time.  AR 1425.  On bad days, she cannot do anything.  She cannot concentrate.  Her head, neck, and eyes will hurt.  She pretty much cannot do anything on those days and "it's pretty much either sitting down or laying down."  AR 1423.  In a typical month, she probably has 16 to 20 bad days.  AR 1423.  She is able to shower and get dressed on her own as long as she sits down.  She drives very seldomly because if she has a headache, then she cannot concentrate on driving.  AR 1424.

In response to questions from her attorney about her medication, Plaintiff testified that her doctors have never offered to give her things like Vicodin or Norco or Percocet.  AR 1426.  If they had

offered it, she probably would not have taken it because she does not want to get addicted.  Her dad had back surgery and back problems for years and got addicted to drugs.  AR 1426-27.

Plaintiff testified that her headaches have been occurring at about the same frequency since 2014, but they are getting more severe.  The doctors have suggested that it is related to her neck condition.  She is still having issues with memory, completing tasks, and concentration because of her headaches.  When lower back pain is bad, it affects her concentration because all she can think about is the pain.  She has never been treated for depression or anxiety.  She still needs to take breaks to lay down even on good days.  AR 1427-28.  When asked why the doctors have not done surgery on her back or neck, Plaintiff testified that right after her neck and back problems were diagnosed, the VA in Loma Linda wanted to do surgery, but Plaintiff did not have any confidence in the doctor and did not want to end up worse.  AR 1429.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's 2022 Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act prior to February 27, 2020, but became disabled on that date.  AR 1391-1405.  Specifically, the ALJ determined that Plaintiff had not engaged in substantial activity since her amended alleged onset date, March 3, 2014.  AR 1394. The ALJ identified the following severe impairments:  lumbar and cervical degenerative disc disease. AR 1394-96.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 19-20.

Based on a review of the entire record, the ALJ found that prior to February 27, 2020, Plaintiff retained the residual functional capacity ("RFC") to perform light work.  She could lift, carry, push or pull up to 20 pounds occasionally, 10 pounds frequently, and could sit, stand, or walk up to six hours each in an eight-hour workday.  She could occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds.  She could frequently balance, stoop, or crouch, and occasionally crawl and reach overhead.  She could have occasional exposure to extreme cold, fumes, dusts, gases, and poor

ventilation, but could not work around heights or dangerous moving machinery.  AR 1396-1402.  The ALJ further found that beginning on February 27, 2020, Plaintiff had the RFC to perform a full range of sedentary work.  AR 1402-03.  Considering her RFC, the ALJ determined that prior to February 27, 2020, she was capable of performing her past relevant work as a retail sales clerk and administrative clerk.  AR 1403.  However, since February 27, 2020, Plaintiff could not perform her past relevant work and there were no jobs in the national economy that she could perform.  AR 403-04.  The ALJ therefore concluded that Plaintiff had not been under a disability prior to February 27, 2020, but became disabled on that date, and continued to be disabled through the date of the decision.  AR 1404.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

1   severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

2   her age, education, and work experience, engage in any other kind of substantial gainful work which

3   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

4   burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

5   1990).

6                              **DISCUSSION**[4]

7          Plaintiff contends that the ALJ has failed to properly consider the relevant medical evidence of

8   record in assessing Plaintiff's RFC for the period of time from March 3, 2014, through February 27,

9   2020.[5]  (Doc. 16 at 19.)  Plaintiff also contends that the ALJ has failed to properly consider Plaintiff's

10  subjective statements and testimony.  (*Id.*)

11       **A.  Residual Functional Capacity**

12         Plaintiff maintains that the ALJ has failed to properly consider significant and relevant portions

13  of the medical evidence in assessing Plaintiff's RFC for the period from March 3, 2014, through

14  February 27, 2020. (Doc. 16 at 20.)  Plaintiff forwards multiple arguments in challenging the RFC,

15  which the Court addresses in turn.

16             **1.  Step Two Severity**

17         Plaintiff argues that the ALJ incorrectly found that certain of her impairments were not severe.

18  (Doc. 16 at 21.)

19         At step two of the five-step sequential evaluation, the ALJ is required to determine whether a

20  plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. §§ 404.1520,

21  416.920.  An impairment, or combination of impairments, can be found to be non-severe if the

22  evidence establishes a slight abnormality that has no more than a minimal effect on an individual's

23  ability to work.  *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen*, 841 F.2d

24

25  _____

26  [4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
    arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific
    argument or brief is not to be construed that the Court did not consider the argument or brief.

27  [5] Plaintiff asserts that "none of the three ALJ decisions rendered thus far in this case are supported by
    substantial evidence."  (Doc. 16 at 20.)  The only decision currently under review is the partially favorable

28  decision issued on January 13, 2022.

303, 306 (9th Cir.1988) (adopting SSR 85–28). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993). A claimant bears the burden of proving that an impairment is disabling. *Id.* (citation omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill,* 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987). "It is not meant to identify the impairments that should be taken into account when determining the RFC . . . . The RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original). Any error in failing to include an impairment at step two is harmless if the ALJ considered any limitations imposed by the impairment in subsequent steps of the analysis. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."); *Morrison v. O'Malley*, No. 1:22-CV-01559-SKO, 2024 WL 21558, at *6 (E.D. Cal. Jan. 2, 2024) (explaining failure to include an impairment in the step two analysis is harmless if the ALJ considers the functional limitations that flow from said impairment in subsequent steps of sequential evaluation).

Here, at step two of the sequential evaluation, the ALJ found Plaintiff's lumbar and cervical degenerative disc disease to be severe impairments. AR 1394. The ALJ further found that Plaintiff's other medically determinable impairments, including asthma, gastroesophageal reflux disease ("GERD"), hyperlipidemia, headaches, left knee, and left shoulder, were non-severe impairments. AR 1394-96. Plaintiff now argues that she suffers from abdominal adhesions, headaches, carpal tunnel syndrome, asthma, plantar fasciitis, osteopenia, and fatigue, which were not properly considered by the ALJ. (Doc. 16 at 21.)

With respect to her carpal tunnel syndrome, plantar fasciitis, and osteopenia, Plaintiff presents no evidence or argument that these impairments had more than a minimal effect on her ability to work. Plaintiff also does not point to any specific limitations from these impairments, nor does she demonstrate that the exclusion of these specific impairments harmed the analysis at subsequent steps. (*See* Doc. 16 at 21-22.) Plaintiff's conclusory assertions are not sufficient. "Unless the plaintiff can show that the exclusion of the impairment harmed the remainder of the analysis, such error will be

considered harmless." *Kessler v. O'Malley*, No. 2:23-CV-01416 AC, 2024 WL 1908078, at *5 (E.D. Cal. May 1, 2024) (citing *Lewis* 498 F.3d at 911).

With respect to her abdominal adhesions and fatigue, Plaintiff posits that "when suffering from significant abdominal pain due to abdominal adhesions, or from her fatigue, due to lack of sleep, or medication side effects, [she] would most likely be incapable of reporting to duty or persisting at work activity on a competitive basis." (Doc. 16 at 21.) Plaintiff's mere speculation, without more, is not sufficient. Plaintiff does not present any medical evidence or medical opinion to support a finding that her abdominal adhesions or fatigue would have more than a minimal effect on her ability to work.

With respect to her asthma, the Court notes that the ALJ expressly considered Plaintiff's asthma at step two of the sequential evaluation. AR 1394. Specifically, the ALJ considered medical evidence demonstrating that her asthma appeared to be stable. In so doing, the ALJ found insufficient evidence that this condition had more than a minimal impact on her work-related activities for any consecutive 12-month period and therefore concluded it was non-severe. AR 1394. Despite finding the condition non-severe, the ALJ determined that a limitation to only occasional exposure to fumes, dusts, gases, and poor ventilation accommodated her non-severe condition.[6] AR 1394. The ALJ therefore considered limitations imposed by Plaintiff's asthma in developing the RFC. Thus, any failure of the ALJ to find her asthma severe at step two of the sequential evaluation is harmless. *See Rodriguez v. Comm'r of Soc. Sec.*, No. 2:21-CV-02421-AC, 2023 WL 3955676, at *5 (E.D. Cal. June 12, 2023) ("Because the ALJ considered plaintiff's migraines in the RFC, any potential step two error regarding plaintiff's migraines is harmless."); *see also Dailey v. Comm'r of Soc. Sec.*, No. 1:23-CV-00073-EPG, 2023 WL 8646384, at *3 (E.D. Cal. Dec. 14, 2023) (concluding that because the ALJ properly considered plaintiff's impairment-related symptoms in formulating the RFC, any error in failing to find the impairment severe or nonsevere at step two was harmless); *Yvonne M. v. Kijakazi*, No. 21-cv-05550-TSH, 2022 WL 3702103, at *6 (N.D. Cal. Aug. 26, 2022) (finding harmless error

---

[6] The ALJ stated that the limitation to only occasional exposure to fumes, dusts, gases, and poor ventilation accommodated Plaintiff's "non-severe *shoulder* condition." AR 1394 (emphasis added). The reference to a "shoulder" condition appears to be a typographical error given the nature of the limitation. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (indicating courts not deprived of their faculties for drawing specific and legitimate inferences from the ALJ's opinion).

where ALJ considered fibromyalgia limitations in the RFC despite concluding it was not medically determinable).

Likewise, with respect to her headaches, the ALJ expressly considered Plaintiff's headaches at step two of the sequential evaluation.  AR 1394-95.  The ALJ concluded that Plaintiff's headaches were non-severe for multiple reasons, including that the longitudinal treatment record made minimal reference to headaches, the longitudinal medical record was not consistent with Plaintiff's hearing testimony regarding the degree and frequency, and there was an absence of any mention in the record that Plaintiff ever requested medication for headaches, including non-narcotic medication.  AR 1394-95.  The ALJ indicated that the medical evidence failed to establish that Plaintiff "has 'severe' headaches that have had more than a minimal impact on her ability to work at any time relevant to her application."  AR 1395.  Plaintiff has not raised substantive arguments challenging the ALJ's findings and conclusions.  Moreover, despite finding the condition non-severe, the ALJ considered Plaintiff's testimony that she has difficulty concentrating due to headaches.  The ALJ then concluded that "[t]he limitations precluding the claimant from exposure to heights or dangerous moving machinery amply accommodates her non-severe headaches."  AR 1395.  The ALJ therefore considered limitations imposed by Plaintiff's headaches in developing the RFC.  Thus, any failure of the ALJ to find her headaches severe at step two of the sequential evaluation is harmless.  *See Rodriguez*, 2023 WL 3955676, at *5 ("Because the ALJ considered plaintiff's migraines in the RFC, any potential step two error regarding plaintiff's migraines is harmless."); *see also Dailey*, 2023 WL 8646384, at *3; *Yvonne M.*, 2022 WL 3702103, at *6.

### 2.  Evaluation of United States Department of Veteran Affairs Disability Rating

Plaintiff also argues that the ALJ erred in her evaluation of the United States Department of Veteran's Affairs ("VA") disability rating.  (Doc. 16 at 22.)

With respect to an ALJ's consideration of prior VA determinations for claims filed before March 27 2017, the Ninth Circuit has held that the ALJ "must consider the VA's findings in reaching his decision and must ordinarily give great weight to a VA determination of disability."  *Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018) (quoting *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011).  However, the ALJ may give less weight to a VA disability rating based on persuasive, specific,

1    and valid reasons which are supported by the record.  *Id.* (quoting *Valentine v. Comm'r Soc. Sec.*

2    *Admin.*, 574 F.3d 685, 695 (9th Cir. 2009)); *see also McCartey v. Massanari*, 298 F.3d 1072, 1076

3    (9th Cir. 2002).

4         Plaintiff argues that the ALJ "failed to cite a single legitimate reason for rejecting the

5    determination of the United States Department of Veteran's Affairs in rating [Plaintiff's] service

6    connected disability at 100%, except to state that the U.S. Department of Veteran's Affairs does not

7    use the same criteria."  (Doc. 16 at 22.)  Plaintiff is incorrect.

8         As required, the ALJ here considered the VA's 90% disability rating from 2006/2007, as well

9    as the VA's opinion that Plaintiff was unemployable.[7]  AR 1401-02, 260-277.  In evaluating the

10   opinion, and affording it little weight, the ALJ reasoned as follows:

11        Based on the persuasive, specific, and valid reasons set forth below, I afford little weight
          to the opinion from the Department of Veterans Affairs, which states the claimant was
12        unable to work and had a 90 percent rating (Exhibits 1F-3F).  I first note that I have also
          the objective clinical and diagnostic evidence that the Veterans' Administration used to
13        come to that conclusion.  I note that the claimant's amended alleged onset date in March
          2014 is eight years after the August 2006 VA Disability decision.  The claimant's work
14        activity from August 2006 to March 2014 shows that she worked steadily each year and
          even had substantial gainful activity earnings in 2013, despite the 90% rating.
15        Additionally, she was her mother's full time caregiver until her death in 2013 (Exhibit 20B,
          page 13).  The 2007 VA determination states, "We have granted a total service-connected
16        evaluation for individual unemployability because you are not able to remain employed as
          a result of your service-connected disabilities."  Clearly, her subsequent work activity
17        contradicts the VA conclusion regarding "unemployability."  The VA determination
          assigned 50% service connection for "status post total abdominal hysterectomy with
18        residual cars," an impairment not even alleged here.  It also found 30% each for asthma
          and GERD, both controlled, non-severe impairments as discussed above.  At the hearing
19        on November 15, 2019, she testified that the main reason she could not work was her back
          and neck, and that her service connected disability was "really more for other issues" than
20        her neck.  Based on the above, I afford this opinion little weight.

21

22

23   AR 1401-02.

24

25   _____

     [7] Plaintiff refers to 100% disability rating.  (Doc. 16 at 22.)  Although unclear, Plaintiff may be referring to the
26   VA's decision that she was unemployable.  *See* AR 272 ("We granted entitlement to the 100% effective
     rate…because you are unable to work due to your service connected disability/disabilities.").  By contrast, the
27   ALJ cites the 90% disability rating assessed by the VA, which was based on "a combined rating table that
     considers the effect from the most serious to the least serious conditions."  AR 1401, 268 ("Your overall or
28   combined rating is 90%. We do not add the individual percentages of each condition to determine your
     combined rating.").

Considering this evaluation, the Court concludes that, contrary to Plaintiff's assertion, the ALJ did not reject the VA rating and opinion only because the VA does not use the same criteria as the Social Security Administration.  Rather, the ALJ proffered persuasive, specific, and valid reasons supported by the record to afford little weight to the VA rating.  First, the ALJ noted that Plaintiff worked for eight years after the VA's assessment, with substantial gainful earnings in 2013 and served as her mother's full-time caregiver until her death in 2013.  AR 1401-02, 1517.  This is a persuasive, specific, and valid reason for affording little weight to the VA's disability rating.  *See Curtis v. Saul*, 843 F. App'x 901, 903 (9th Cir. 2021) (concluding ALJ provided persuasive, specific valid reason to afford little weight to VA disability rating where claimant performed substantial gainful activity after the VA's  decision); *accord Valentine v. Comm'r Soc. Sec. Admin.,* 574 F.3d 685, 695 (9th Cir. 2009) ("The ALJ was justified in rejecting the VA's disability rating on the basis that she had evidence the VA did not," including opinions of the agency psychologists, evidence of work history and post-retirement activities, and the input of the vocational expert.).

Second, the ALJ considered that the VA's disability rating was based in large part on impairments either not alleged to be disabling or were found to be controlled, non-severe impairments. AR 1402.  For instance, the ALJ pointed out the VA assigned 50% service connection for "status post total abdominal hysterectomy with residual cars," an impairment not alleged here.  AR 180, 260-61, 267, 1402.  The ALJ also noted that the VA found 30% each for asthma and GERD, both controlled, non-severe impairments.  AR 267, 1394, 1402.

Third, the ALJ considered Plaintiff's own acknowledgement of the difference between the basis for the VA disability rating and the reasons why she believed she could not work.  Specifically, the ALJ cited Plaintiff's own testimony that the main reason she could not work was her back and neck, but that her service connected disability rating was "really more for other issues."  AR 1126 ["Q Okay.  So, your neck and back are your two biggest problems?  A  Yes, sir."], 1136 [Q  Okay.  All right.  And then you have been receiving veteran's 100% service connected I believe for a number of years?  A  Yes.  Q  But that was really more for other issues than - -  A  Yes.  Q  -- your neck?  A Yes."], 1402.

.

### 3. Evaluation of Opinion Evidence

Plaintiff contends that the ALJ has based the "entire opinion as to Plaintiff's residual functional capacity between March 3, 2014 and February 27, 2020 upon the assessments of two non-examining/non-treating state agency physicians who found Ms. Jenkins capable of persisting at light work activity …. This analysis by the Administrative Law Judge[ ] is inadequate and constitutes reversible error." (Doc. 16 at 22-23.)  Beyond this contention, Plaintiff proffers no meaningful argument to demonstrate that the ALJ erred in the evaluation of the medical opinions from the non-examining state agency physicians.  Plaintiff also does not provide any relevant legal standards or pertinent case law.  Further, a review of the ALJ's decision indicates that she did not rely solely on the opinion of the state agency medical consultants in determining Plaintiff's RFC for the relevant period.  The ALJ also considered the opinion of Plaintiff's treating physician, Dr. Mark E. Mildren, and assigned it partial weight.  AR 985-93, 1402.  Plaintiff does not identify any error in the ALJ's evaluation of Dr. Mildren's opinion.

### 4. RFC for Sedentary Work as of February 27, 2020

Plaintiff argues that the ALJ's findings and conclusions that Plaintiff's condition limited to her sedentary work as of February 27, 2020, is arbitrary and without basis in the record.  (Doc. 16 at 23.)  The Court disagrees.

In limiting Plaintiff to sedentary work beginning on February 27, 2020, the ALJ determined that Plaintiff's conditions had "progressed to the point that she would not be able to do the standing and walking for light work."  AR 1402.  This determination was based on a cervical spine x-ray completed that same day, which showed "progression of C5-6 degenerative disc disease."  AR 1403, 1717 ("Progressing moderate C5-6 degenerative disc disease with disc space narrowing . . . .").  It also was based on Plaintiff's corresponding treatment records of that date, which included Plaintiff's report of low back pain of about 6 or 7 and clinical findings of positive straight leg raise on the left and sensory numbness in the left foot.  AR 1403, 1814.  The ALJ also considered a subsequent MRI of the lumbar spine completed in July 2020, which showed severe central canal stenosis at L4-5.  AR 1403, 1712.  The ALJ additionally considered a July 2020 MRI of the cervical spine, which showed multi level cervical spondylosis, most notable at C7-T1, where there was moderate central spinal canal

15

1  stenosis secondary to superiorly migrated central disc extrusion with flattening of the ventral surface

2  of the cord preservation of the CSF and no cord signal abnormality.  AR 1403.

3        Plaintiff argues that although the ALJ references Plaintiff's complaints of low back pain, neck

4  pain, and left foot numbness as a justification for the worsening of Plaintiff's condition, her

5  complaints of low back pain and numbness extend back to the alleged onset date in 2014.  (Doc. 16 at

6  23-24.)  However, Plaintiff makes no argument related to the ALJ's consideration of the

7  corresponding clinical findings of positive straight leg raise on the left and sensory numbness in the

8  left foot.  AR 1403, 1814.

9        Plaintiff also does not substantively challenge the ALJ's reliance on the February 27, 2020 x-

10 rays showing progression of Plaintiff's C5-6 degenerative disease as support for finding of a

11 worsening of her condition.  Plaintiff notes only that the ALJ "seems to focus on the radiologist's use

12 of the word 'progression' as a basis for a finding of further limitations to sedentary activities . . . ."

13 (Doc. 16 at 24.)  Instead, Plaintiff asserts that the medical record includes multiple MRIs of her

14 cervical spine that "reflect consistent finds throughout the relevant time period, both before and after

15 the ALJ's arbitrary date of February 27, 2020" and "demonstrate moderate degenerative disc disease

16 at multiple levels of the cervical spine with spinal canal stenosis and neuroforaminal stenosis of a

17 moderate degree in each and every MRI that is contained within this record."  (*Id.* at 24, citing AR

18 351-52 ,750, 1715-1716.)  Yet, a review of Plaintiff's cited evidence suggests differences between the

19 MRI findings with respect to Plaintiff's C5-6 degenerative disc disease.  *Compare* AR 750 (August

20 2015 MRI:  "There is *mild to moderate* narrowing of bilateral neuroforaminal of C5-6.") with AR

21 1715 (July 2020 MRI:  "Bilateral uncovertebral hypertrophy resulting in *moderate* bilateral neural

22 foraminal stenosis.").

23       Plaintiff further contends that it is impossible for the July 2020 MRI of her lumbar spine to

24 support the ALJ's findings of a worsening of her condition, because the radiologist clearly noted that

25 the findings demonstrated no significant interval change since an October 2018 MRI.  Even if correct

26 (*see* AR 1712-13), Plaintiff does not point to similar evidence related to the specific findings from the

27 July 2020 cervical spine MRI relied upon by the ALJ, which showed multi level cervical spondylosis,

28 most notable at C7-T1, where there was moderate central spinal canal stenosis secondary to superiorly

migrated central disc extrusion with flattening of the ventral surface of the cord preservation of the CSF and no cord signal abnormality.  AR 1403, 1715-1716.

Plaintiff's arguments appear to seek a different interpretation of the evidence considered by the ALJ.  However, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Shaibi v. Berryhill*, 883 F.3d 1102, 1108 (9th Cir. 2018).

**B.  Subjective Testimony**

Plaintiff contends that the ALJ failed to properly consider her subjective statements of record and testimony.  (Doc. 16 at 26.)  Plaintiff maintains that the ALJ failed to identify any significant or legitimate reasons for rejecting her symptoms, let alone clear and convincing reasons.  (*Id.* at 30.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

Plaintiff argues that the extent of the ALJ's consideration of Plaintiff' subjective statements of record and testimony was limited only to the statement:  "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to the established onset date."  (Doc. 16 at 28, citing AR 1398.)  The Court disagrees.

In evaluating Plaintiff's subjective complaints, the ALJ reasoned as follows:

[T]here is ample objective evidence confirming that the claimant has degenerative disc disease of the lumbar and cervical spine.  However, her subjective statements regarding her pain and limitations are not entirely consistent with the record.  I note that she does not take prescription medication, and there is no indication that she has requested non-narcotic pain medication.  While the Appeals Council noted that medication was adjusted in August 2017, the only medications that were adjusted/added were respiratory medication, as she

reported symptoms due to smoke from fires and weed abatement (Exhibit 22F, [page] 74). In fact, the chart notes also stated that she had "no loss of function" from her low back pain, she had normal gait, she had full, pain free range of motion of her neck, and she had no change in range of motion or strength in her extremities. She testified that Aleve helps her pain, and the record indicates that she has taken this for several years. While she testified at the November 15, 2019 hearing that she can only sit for five minutes on a bad day, on November 30, 2021 she testified that she sits most of the day when she has a bad day. She testified in April 2016 that her knee pops out and she falls, but she has never reported falling to any medical provider, and just four months prior to the April 2016 hearing she denied any falls. She either uses a TENS unit but it only helps a little[ ] (April 2017 hearing testimony) or she only uses it once in a while when the pain is bad (November 2019 hearing). Objectively, numerous chart notes indicate normal strength, and there is no indication of atrophy. Her gait is consistently noted to be normal. Thus, the evidence indicates that while she does have significant objective findings related to her neck and back, this condition has not impaired her gait, and her pain is relieved somewhat with over the counter medication.

AR 1401.

The Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints. First, the ALJ determined that Plaintiff's subjective statements regarding pain and limitations were not entirely consistent with the objective medical evidence. AR 1401. While a lack of objective medical evidence cannot form the sole basis for discounting testimony, inconsistency with the medical evidence or medical opinions can be sufficient. *See Woods v. Comm'r of Soc. Sec.*, No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *accord Dittmer v. Comm'r of Soc. Sec.*, No. 1:22-CV-01378-SAB, 2024 WL 967439, at *9 (E.D. Cal. Mar. 6, 2024) ("Ninth Circuit caselaw has distinguished testimony that is 'uncorroborated' by the medical evidence from testimony that is 'contradicted' by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard."). For example, when considering evidence of a respiratory medication change in 2017, the ALJ expressly identified corresponding treatment notes stating that Plaintiff had "no loss of function" from her low back pain, she had normal gait, she had full range of motion of her neck, and she had no change in range of motion or strength in her extremities. AR 1401, citing AR 1382; *see also* AR 1381. The ALJ also observed that

"[o]bjectively, numerous chart notes indicate normal strength, and there is no indication of atrophy. Her gait is consistently noted to be normal." AR 1401.

Second, the ALJ considered that Plaintiff was not prescribed pain medication, she did not request non-narcotic pain medication, and her pain was somewhat relieved with only over-the-counter medication. AR 1401. The ALJ also considered Plaintiff's testimony that "Aleve helps her pain, and the record indicates that she has taken this for several years." AR 1401. The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits."). Further, evidence of "conservative treatment" involving "over-the-counter pain medication" is sufficient to discount a claimant's testimony regarding severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

Third, the ALJ considered inconsistencies in Plaintiff's testimony and statements. An ALJ may employ ordinary techniques of credibility evaluation, such as considering claimant's inconsistent statements and other testimony by the claimant that appears less than candid. *See*, *e.g.*, *Moreno v. Comm'r of Soc. Sec.*, No. 1:19-cv-01580-SAB, 2021 WL 84376, at *6 (E.D. Cal. Jan. 11, 2021) (citations omitted). Indeed, inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, are relevant in evaluating subjective symptom testimony. *See Taylor v. Kijakazi*, No. 1:22-cv-00215-BAM, 2023 WL 7024351, at *9 (E.D. Cal. Oct. 25, 2023); *Bradley P v. Kijakazi*, No. EDCV 21-00298-AS, 2022 WL 5048317, at *4 (C.D. Cal. Mar. 24, 2022), citing *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). Here, the ALJ noted, among other things, inconsistencies in Plaintiff's testimony regarding her ability sit. AR 1401. Specifically, the ALJ stated, "While she testified at the November 15, 2019 hearing that she can only sit for five minutes on a bad day, on November 20, 2021 she testified that she sits most of the day when she has a bad day." AR 1401; *compare* AR 1133 with AR 1423. The ALJ also noted inconsistencies between Plaintiff's testimony and statements regarding her left knee, citing Plaintiff's testimony in April 2016

that her knee pops out and she falls, "but she has never reported failing to any medical provider, and just four months prior to the April 2016 hearing she denied any falls." AR 1401; *compare* AR 47 with AR 1064-67. Additionally, the ALJ identified inconsistencies in Plaintiff's testimony regarding her use of a TENS unit: "She either uses a TENS unit but it only helps a little[ ] (April 2017 hearing testimony) or she only uses it once in a while when the pain is bad (November 2019 hearing)." AR 1401; *compare* AR 46 with AR 1138.

Even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle*, 533 F.3d at 1161-63 (concluding that two invalid reasons to reject a claimant's testimony was harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

///
///
///
///
///
///
///
///
///
///
///
///
///
///

### CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. 16) is DENIED.

2. The Commissioner's request to affirm the agency's decision (Doc. 18) is GRANTED; and

3. The Clerk of the Court is directed to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Dorette Gail Jenkins, and to close this case.

IT IS SO ORDERED.

Dated:   __August 21, 2024__          ___/s/ Barbara A. McAuliffe___

UNITED STATES MAGISTRATE JUDGE

21